I am reserving 3 minutes from my 9 minutes, leaving, I think, 11 minutes for argument. So 3 from the 9 and 11, that's very good. My colleague, Mr. Angle, who represents Mr. Barrow, will be arguing for 6 minutes and will be addressing the state created danger issue. I am prepared to answer all questions the court has regarding this matter. And I will defer to the court if the court has any specific issues it would like addressed because there are so many issues in this case. Well, there are a lot of issues. I guess I'm having problems at the very beginning. You're getting a private cause of action out of the language and the function and the application of this statute. Maybe we can start there. It's a tragic case, obviously. It's a terribly tragic case. Yes. We're not suggesting that there is a private right of action under the statute. Under 1983, right. And I understand the question. Well, 1983 doesn't give its own right. It's a way of enforcing individual rights that are paid someplace else. So the question then becomes, does Delamar Vera and Lucida Cuevas, do they have a right to a report, which is what the statute requires? And the way we look at that is simply to look at the terms. Would they have a cause of action for felony to have made the report? Well, if the court finds that a right is conferred in the missing children statute to a report, then we go over to 1983 and that's how we enforce the right. But there is no requirement, as I read the cases, that the right of action be articulated anywhere in the missing children statute. In fact, it would be an odd thing if that were to happen, because 1983 is there to enforce rights that exist in other statutes that don't provide them. And I think the Supreme Court has spoken to that. Before we even get to that, would you agree that where a law enforcement agency has determined that a child is dead, there is no reporting? It would make no sense. And that's what happened here. It doesn't make sense, Your Honor, and it doesn't make sense that they declared the child dead. Well, that's a different issue. It is, but it's related, Your Honor, because the way the statute sets forth the requirement, when the whereabouts of a child are unknown to the guardian, the statute defines missing child with reference to the guardian, which is usually the parent, and says that's when you have to make a report, not four days later, not if you've come up with some other thing. You get a report, make a report, and it's not that big a deal, practically speaking. You just communicate the information to the Department of Justice. At that point, there was no reason, they found no reason to believe that the child was missing. That may well be correct, but for purposes of their duty under the statute, it is irrelevant, because the statute says when the parent doesn't know the whereabouts of the child, that's a missing child. Well, this is, boy, it's got to be incredibly expensive and more difficult, because obviously the problem here was that everybody, even possibly the mother for a period of time, thought that they knew the location of the child. They thought the child was in the bedroom. The mother took issue with that, but apparently she reconciled herself to the conclusion that, because she had to pursue this thing with the babysitter, and she thought, well, wait, I know the kid was not in there. I've got to talk to the babysitter and find out what in the heck, what happened to my baby, because the baby was not in that room in the firebrook, and she didn't. That's a good point. She assumed that the child was where the police and the firemen told her it was. She didn't assume it. She took their word for it. She accepted it. She accepted their official proclamation of death, which not many people are going to ignore and start hiring investigators. So I return to my first question. If she accepted and they accepted the notion that the child was dead, how does the statute even come into play? The statute comes into play at the first instance. Is the child's whereabouts known to the guardian? The answer is no. A report is due, period. But that's a rephrasing of the question, though, that answer. No, because it is not because they did not, they never found them. They never determined the whereabouts. They didn't determine the whereabouts of the child. And that's a critical issue, Your Honor. And that is a factual issue, I understand, but it is a fact issue that is pleaded that no remains were ever found. And they concluded that it was an incident. Exactly. It was only a factual issue if we were to find the fact that there was a private right of action under the statute, correct? Well, it's a pleaded fact, so it is an accepted fact that there were no remains, that there was no physical evidence that the child. No, I understand. It seems that the statute that we're talking about, the National Child Search Assistance Act, which has these two sections to it, the issue to me is where is the rights-creating language in that statute, not the other statutes that you're trying to tie into this case, but that statute itself. I don't see any rights-creating language. Well, the rights-creating language is, first of all, it says missing children. It says a missing child. That is focusing on the child, so that is indicia of. Yeah, but the obligation is not there. The obligation is not with the child or the parents. The obligation is directed specifically toward the agency. Correct, correct. But the beneficiary of it is mentioned in the very title of the statute, and that's indicia of rights-creating language. But the beneficiary is not enough, though. It is not enough, but the use of the word shall, which is mandatory. Again, not enough. It's a mandatory reporting requirement. Correct, it's a mandatory reporting requirement. That's very different from giving them a private right of action. That is exactly right, and we are not suggesting that the statute confers a private right of action, and have never suggested that. What we're suggesting, and what we believe to be true, is that the statute confers a right to a report. Okay. And once you have the right to a report, I latch on the 1983 and say, you didn't give us a report. I'm suing you under 1983 because had you made that report, a bunch of things would have happened in the criminal justice system that would have resulted in Denmark being recovered very soon. Haydn is dealing with Castle Rock now, where there was a specific language requiring a peace officer to take certain steps. They were limited to the need to take those steps, refused numerous times to take it, and there's no private. There's a right to have the enforcement, clearly, and there's even a right there on the part of the individual, so it's easier in a sense than in that case. Actually, they say you don't have the right in that case. In Castle Rock, and you shouldn't have a right in Castle Rock if you use the test that's articulated because there was discretion everywhere. The face of the— Well, there was discretion everywhere except on the face of the order. The face of the order actually said reasonable efforts to enforce. Reasonable. Reasonable. So that's what we get. Here there's no reasonable. You cannot even wait two days under this statute. You have to make the report. That says we don't trust you anymore. Local law enforcement, enough of this waiting period. We are federalizing the reporting of missing children. Why? Precisely because we need to get the information to get the ball rolling. Kids are paying for these delays. But they did not—there's no evidence they believe they had a missing child. There is evidence, Your Honor. But they believe that they had a missing child. I'm sorry? There's no evidence they believe that there was a missing child. Their belief is not part of the equation. They are required when a mother comes in and when a mother says, as she did at the scene, my child is missing, and they know that she said my child is missing, and they do nothing regarding the reporting. And to go to your earlier point, what were they thinking? You don't have a body. You don't have any remains. The temperature is way lower than could ever incinerate a child. It is. That is correct. It is. But we pleaded that it was an inadequate investigation as well. And this right to a report is, to use Judge McKee's word, the fulcrum. That is it. If we get the right to a report, we get to Section 1983. And we should be entitled to prove that had that report been made, she would have been recovered and bring in experts in the field of criminology, et cetera, missing children experts. How do you describe that with Gonzaga and what Gonzaga seemed to have done to the blessing test? Are you just looking at the fact that the mandated report gives you the implied rights language hurdle? It gets you over that hurdle? No, I take it together with the utter lack of discretion the taking of discretion away from local authorities regarding this. And it's kind of a holistic approach. You've got the definition of missing children from the perspective of the guardian, the prohibited waiting time, the reporting requirements. I guess you're saying, you're not saying it, but you could argue that Gonzaga is different because that's a funding power. Yes, and this is not a spending clause case, it never was. It's simply a command, do this. And I note that there's no enforcement mechanism contained in the statute, which leads one even more to come to the conclusion that a right is conferred such that it could be enforced under Section 1983. The statute is directed to imposing nationwide consistency in the reporting of missing children. There's no suggestion in the statute that it gives any rights, whether you talk of a personal right of action or anything, confers any kind of right on the missing child or his or her family. I hear what you're saying, Judge, and if it did say you have the right, I guess we wouldn't be standing here. I don't know of any cases where the statutes do say you have a right. It's never, and that's just the nature of legislation. But here, the focus is on, maybe it's the same thing, the focus is on the agency, not on the individual. I argue otherwise, Your Honor. It's like the data processing provisions in blessings. I mean, they want to have a central command post. Well, it says missing children. Yes, Your Honor, but it does say missing children on the statute. I don't want to belabor the point. Well, we've got to put a label on it. But if you're so concerned about a bureaucracy, you're not going to call it missing children. You're going to call it the Omnibus Reporting Requirements Act or something. If you want to establish national requirements on all the law enforcement and you're prohibiting waiting periods, nationally and politically you've got to make it fly, you call it missing children. And it's clear that it's requiring the local law enforcement folks to make these reports. Well, actually, the correct name is the National Child Search Assistance Act of 1990. There's another statute called the Missing Children's Assistance Act. This statute is, as Judge Berry referred to it, not called the Missing Children's Act. No, I never said the Missing Children's Act, Your Honor, and I apologize if I gave that impression. The Missing Children's Statute is what I referred to it as. Yeah, you referred to it as that, but that's not what it's called. No, only those two sections, yes. The National Child Search Assistance Act. Yes, I'm aware of that. Okay. And I note that in my brief what the proper title is, et cetera. Well, not only after the police take issue with your reference to it. Well, they were actually incorrect with their reference to it, and so we were correcting each other back and forth below. My point in raising the issue of it saying missing children at the heading is to show that from the four corners of 57, 79, and 80, they're concerned about missing children. They're not concerned about home keeping. Well, they're talking about searching for missing children. They are, and the reasons are? What can help them more efficiently and expeditiously search for those missing children? And why is that a concern, though? Why is efficiency of concern to the legislature? It is apparent from the statute that it is important to have this record keeping to save lives. Sure, but is this a right that can be invoked by your client? That's really our question. A right to a report, yes. That is the question. Do you have a right to a report? You would have it that if they would have had to file this report in this case, that every time there was a fire in which there was a fatality involving a child, until the coroner went through and gave a cause of death, you'd have to file a report under this statute. No, because the difference is that you have a corpse. You know the whereabouts. You may only have ashes. You may have ashes, but you know that they are ashes of a human being. How do you know until you do a DNA? You don't know. Some of these cases take weeks, months for a conclusive type of coroner. That's a good question, and the answer is that if someone has made a missing children report to you, despite all that.  Oh, yes, that's not so. No, but my point is every time you had a fire with a child as a fatality, under your interpretation it seems you'd have to file a missing person report. Only if the parent said, I don't know where my child is. Only if there was a claim of a child being missing. It's not an obligation or affirmative obligation for these law enforcement entities to go out and make a decision about whether someone is. It's simply, you tell me you don't know where your child is. I'm going to tell DOJ. That's it. If no one says anything and I have a fatality in a fire, then the issue doesn't even come up. And that's in your complaint. Is that in your complaint? Which aspect, Your Honor? That Ms. Cuevas reported her child missing. It is, Your Honor. Ms. Cuevas reported her child missing. The investigation determined the child was dead, and Ms. Cuevas did nothing. And I don't mean to be harsh or anything about it, but why would the investigators, why would the appropriate law enforcement agency not have believed that her earlier report was, she was satisfied with the determination of death and that the child was not missing? She was. She had to have been satisfied. She was told this is an official. And she accepted it. As much as an Hispanic woman accepts anything from the government, yes. Your child is dead. The child is dead. So the child isn't missing. She no longer believed the child was missing when she got their report. But this is all after the reporting requirement was triggered. It's not you have an obligation under the statute. It doesn't say you have to report it, but if you change your mind, then you don't have to have the obligation. So that's harmless error that there was no report. No, it's not harmless error, because had there been a report, Department of Justice would have been involved. You said that the reporting requirement was already triggered, but shortly after it was triggered, they ascertained that she was dead. I'm saying that once you have a child that is missing to the mother and that is reported to you, you have an obligation to report it. Even though at that point it would be a false report. But it was also, well, Your Honor, speaking of false reports, the city declared, said that your child is dead. That was false. I'm not implying anything malicious about it. That was also ridiculous. But it really was ridiculous because they had no body. You can't say that death equals no longer missing. But that's not whether the act imposes a right. That's a different question. Correct. There may be, and I haven't thought about this now, there may well be a, and we don't get to it clearly, but there may well be a causation hurdle that you can't get over, because had that report been issued, clearly as soon as the medical examinations report came back, that report would have been either withdrawn, rescinded, or just totally ignored. Closed. Closed. That's why I say harmless error effectively. The child is missing. The medical examiner said the child died. End of case. We would like the opportunity to explore that causation issue on the facts. Well, as I said, the issue is not before us. I don't know. That's where you want to go. Well, your red light is on. Thank you. As you can see by our silence, he's got to think. He's got to be thinking. It doesn't involve math. I hope. I'll come back. I can think. Mr. Engel? Thank you, Your Honor. May it please the Court, Michael Engel on behalf of Pedro and Delmar Merrill. Your Honor, I'd like to address the state-created danger aspect of our causes of action here. Let me first state that there has been argument made below and perhaps a misconception that the appellant's cause of action with respect to state-created danger is premised upon the idea that the city and its agents and officials were supposed to have a crystal ball and realize that Carolyn Correa was going to kidnap Delmar Merrill. And that's certainly not our claim. But how in the world do you get state-created danger? Your foreseeability might—I mean, it seems to me that's even kind of close, but for us to give you foreseeability, what are you going to do? It shocks the conscience. Well, you might be able to overcome that or maybe turn yourself out of the way, et cetera. It's getting better for me. The relationship. Yes, sir. Let's focus on the fourth one. How did the state use its authority to create the danger? The state didn't create the danger here. It was the housekeeper who created the danger. Well, in looking at the case lawyer, it talks about the issue of where the action created the danger or rendered the citizen more vulnerable to danger that the state had not acted at all. That's the point. The kid was already gone, kidnapped. Correct. The change that happened would still have occurred. Now, you can argue that the child would have been apprehended sooner, and you may well be right about that. I'm not sure you are. But it's somewhat judgmental in that you could argue you have a chance to prove it. But I still don't understand how the state created that particular danger. Well, first, Your Honor, we were only at a 12B6. That's why I'm asking. The housekeeper is really not in the complaint, is it? The housekeeper was in the house the day of the fire, and the housekeeper said she had lost a child. That's not a matter of record on the 12B6 because it was not in the complaint, correct? That is correct, Your Honor. That was only your argument before the district court on summary judgment. That is correct, Your Honor. So we don't even know about the housekeeper for purposes of what's before us today. Yes, Your Honor. You are correct about that. So there's nothing at all about a housekeeper having been there on the 12B6? That is not in the complaint itself, Your Honor. What is in the complaint is that the mother did report the child missing, that we know there was this erroneous determination of death without any evidence to do so. It's the appellant's contention that where the state actors decided, they acted affirmatively by declaring death when there was no basis to do so. And what happened is, is now no investigation occurs either by state actors or by the parents. Nobody is looking for an infant child who has now been declared dead. The state actors, had they done nothing, had they done absolutely nothing in this case, the question of where was Delamare Vera would not have been answered by state authority by saying Delamare is dead. But the mother could have gone and had an independent investigation into the whereabouts of the child. We're getting very close to the Bright case here, where the father said if he'd only known he would have done something to protect the son. And that wasn't enough. Where the state has not made the child or citizen more vulnerable to danger, they haven't made it. Where third parties forego action based on what the state has done. I just don't see this bond being satisfied. The question becomes, Delamare Vera was subjected to a false imprisonment for a period of about six years. It's not just the singular act of the kidnapping. The crime was a continuing one. And that false imprisonment... We don't know about a kidnapping. It's not a matter of the record before us. Well, we do have an indication in the record that as a result of the later determination by the mother that this was her child, that Carolyn Correa was apprehended and charged with these offenses. That is pled in the complaint, Your Honor. I'm concerned about the first prong of the state-created danger test. The foreseeability argument and whether it was foreseeable and whether the continued absence over that six-year period was a direct consequence Two cases that... I know we've had a lot of these state-created danger cases in recent years, but two cases that talk about those two steps is the Rebus case and the Smith case. Yes, Your Honor. In both of those cases, my recollection is the crux of our finding that that step was met was the fact that the state actors involved knew of something that they didn't do or that they did do. In Rebus, the EMTs didn't tell the police that there had been a seizure. All they said was, Rebus assaulted us. And in Smith, the police who went in knew about the health condition that Smith had that may have, under the anxiety of that kind of search, may have led to the result that happened. All they had was this report, my child's missing and they have a fire. It was impossible for them to have known anything other than that report and the fire. They didn't know about the fact that someone else took this kid. So how could it have been conscious on their part? It could have been negligent, but it wasn't conscious. I don't know if it goes well beyond negligence. I mean, I'll give you it clearly. I know negligence doesn't get you where you need to get to, so I'm not giving you much. But those are the two steps that really concern me. If I may respond to that, Your Honor. This isn't a situation where they just had a mother say, I went up to the room, my child was missing, and we have a fire. There was more to it than that. They conducted an extremely brief investigation. At one point in time, they're telling the family that what turned out to be bed mattress was the remains of the child. Then they're saying that's not remains of the child. We have no remains of the child. And then they're making a scientific determination that couldn't be possible. We have a number of things that are going on where, just like in Rebus, where there was an omission to tell the officers about the seizing condition of the eventual victim in that case, like in Smith, where you have the situation where there was a question as to, did some of the officers know of the victim's PTSD, his Vietnam experience, his heart condition, et cetera? And then they took certain actions and prevented certain actions of his family in terms of they wouldn't let the family talk to the individual. They cut off the route of escape. And this court looked at those circumstances and they said, well, it's possible that something different could have occurred. In Rebus, this court said it's possible that if they had just left Mr. Rebus in the room, his seizures would have been okay and he would not have died. It was possible that if Smith was allowed to talk to his family and that if he wasn't surrounded by the police and had his means of returning home cut off, he may have just come home and that would have ended the scenario. He wouldn't have had a heart attack and died. What we're saying is that if the city and its agents had not made all of these erroneous determinations, had they not falsely told the family that the child is dead and therefore no one was going to look for that child, then perhaps, and it's a strong perhaps I suggest to you, Your Honor, that if law enforcement started looking for a child and interviewed witnesses and figured out that Karen Correa had been in that house that day, she would have been one of the individuals interviewed right away. And she was concealing a 10-day child that they knew couldn't walk away on its own and was only doing it 20 miles across the river in New Jersey. You're really putting a very, very good spin for you on what really is a failure to act case here, I think. Our most recent case on state action was just in August, the Bennett case, Bennett v. City of Philadelphia. Yes, Your Honor. And Judge Sloviter, in the opinion for the court, spoke over and over again of the affirmative acts that are required here, not a failure to act. That's not enough. Indeed, her last, near the last sentence says, Maiden's actions did not result in the creation of dangers by the state, but rather those dangers already existed. Maiden was therefore not the but-for cause of the harm to Portia Bennett in this case. But-for, if that's the test, not it's possible, you lose, right? Yes, but-for in this case, we shouldn't lose, and this is why, Your Honor. But-for the affirmative acts of the city and its agents. Or I could say, but-for the failure to act in other than a negligent fashion. And I understand, there's two ways of looking at this, and I understand how Your Honor is seeing it, but if you could just take a moment and look at it from this perspective. There wasn't a failure to act in the sense that we're saying there was a failure to investigate. The failure to investigate and the failure to attempt to help Della Marvera and her family came as a result of the affirmative acts of the city and its agents in making a false and erroneous declaration of death and ignoring the mother's indication that a 10-day-old child was not in the crib when she went up to where the child had last been. Given that, those are actions on the part of the state actors. They're not failures to act. The actions, which were erroneous and, at the very least, grossly negligent, those actions then led to a continuing failure to act, which is the lack of investigation that comes later. It only becomes a question of an omission to act if you look at it as they messed up and they failed to investigate. But this all stems from actions that were taken by the city officials and their agencies, and that's the difference. After the state created the danger, right? After the state. The state created the danger here of Della Marvera remaining in captivity with Carolyn Correa for six years because they said she's dead  Thank you, Your Honor. Thank you, Counsel. Someone reserved a rebuttal over there, I think. Didn't you? Your side has a rebuttal there? Ms. Marone reserved a rebuttal. Okay, okay. Is this her? Hi. Hi. Jane Gosvan, and I represent all of the appellees other than Dr. Kaufman. Dr. Kaufman's represented by Mr. Shea, who's here today, but I'm going to argue on behalf of both of us. And I'll start out by addressing the statutory issue. And I continue to hear Mr. Marone contend that it's enough for the purpose of proving that there's rights-creating language in the statute, that it's enough that there's a mandatory binding obligation conferred, which I also disagree with, but I'll get to later, and that there's a mention of the benefit in class. And I would contend that Gonzaga means something more. And when Gonzaga analyzes the issue of whether there's rights-creating language in the statute, it doesn't even consider the issue of whether the language is mandatory or not. Therefore, rights-creating language means something different. And this Court in Savory confirmed that, because this wasn't in my brief. I do have a pen cite, 367 F. 3rd at 189. It is more than the zone of interest, though, isn't it? The language in the reporting statute, her relationship to that right, if you want to call it that, is more than her simply being within the zone of interest generally of the statute? No, Your Honor, I wouldn't concede that at all. Why not? Because it's only her interest that this— it's her interest is the reason the statute is there. The statute only considers and is only driven by the need to find missing children and to have some kind of intra-agency, inter-agency cooperation and database to find missing children. But I do believe that that's— not just within the zone of interest, it is the only interest. But I do believe that that's the problem that Gonzaga was addressing, as Gonzaga was saying that an intention to benefit a group of persons, even a very particularized group of persons, isn't sufficient to prove that you are intending to confer a right upon those persons. And I think that all you have to do is to contrast the language where courts have found there to be rights-creating language with the language in this statute. And on the issue—the only thing that I hear Mr. Marone to be bringing up there is that the statute into which the National Child Search Assistance Act was placed by the codifier is entitled the Missing Children's Assistance Act. And for two reasons I submit that that's not enough. First of all, that's the intention of the codifier to place that statute into the Missing Children's Assistance Act. This statute that we're talking about is indeed the National Child Search Assistance Act. And because we're talking about something that's an issue of congressional intent, not codifier intent under Gonzaga, it's not relevant what that statute's entitled. But I also don't mean to back away from that statute because I think that the mere mention of missing children in a statute isn't sufficient either. And if you look at the things that the Missing Children's Assistance Act does, I contend that that's also even more clearly a statute that's about institutional policy and practice. If you're right, how do you enforce that institutional policy? What's the remedy? If you're right, how do you enforce that statute? Is there just kind of a piece of paper, a columnist floating out there in the hope that there'd be some compliance with it, but there's no way to enforce compliance? Well, I'd invite the Court's attention to 5779B, which states that the Attorney General is to establish guidelines for carrying out the purposes of the Act. Do you think the Attorney General can establish guidelines ordering states what to do? And that's the other piece of the puzzle, Judge Berry. I wouldn't assert that this statute did intend to confirm a mandatory binding obligation because the backdrop is that I don't know where that congressional power would come from to do that. The Tenth Amendment prohibits states from doing that, and that's why most often we see these issues brought up in spending clause cases. And I also wanted to just point out that subsequent to Gonzaga, the Rancho Palos Verdes case from the Supreme Court, it suggested that this issue of rights created in language doesn't just apply in the spending clause context, it applies generally. And Judge Posner made that exact point in McCready v. White, which is cited in McCready. Well, is there any way to enforce the statute? You've got the Attorney General cranking out regulations. Let's assume that you have a situation not as tragic as this one. Let's assume that a kid runs away from home. Parents go to the police and report the kid missing. Johnny's run away from home again, big deal. They don't file a report. What happens then? Mrs. Jones, Mrs. Santiago, Mrs. whomever just goes home and says, well, you know, too bad. What happens? How do you enforce it? Well, it looks to be the intent of Congress that it intended for the Attorney General to do something here. To probably get regulations. But coming back on that, I wouldn't submit that even if there were just a complete lack of ability to enforce the statute, that that would be sufficient to infer a private, to infer that there was a personal right conferred. And I'd invite the court's attention to the Doe case. In my briefs that Judge Pollack decided, where Judge Pollack said that, well, the absence of an enforcement provision in here suggests to me that it didn't intend for parolees to be able to enforce an interstate parole compact. But that's evidence that there is an intent to confer rights. And as I said, I think there was initially in this act a provision that conditions the grants for missing children's services upon compliance with this act. And it was excised and the language was put in about that the Attorney General may issue guidelines. I'm still trying to think. What happens, though, did Congress envision putting a statute out there under situations where a particular jurisdiction will just thumb the nose at the statute for whatever reason? Let's assume that a particular jurisdiction has a policy, specifically from certain more impacted neighborhoods, that if they get a report of a runaway, they're going to wait 30 days before they do anything about that. Because I know those kids run away all the time. That's the way they are. So they wait 30 days in direct violation of the act. And what happens? Do they go to court to get a mandamus, which is going to take more than the 30 days? How do you enforce that kind of a remedy? Well, there's nothing in the statute to do. And it adds to me that the way to have done it constitutionally would have been a spending clause provision to condition a carrot to us for the stick of requiring us to comply with this. But even leaving us... Well, if there's nothing to enforce, then why wouldn't you factor that in to the determination of whether or not it was intended for 1983 to step in? So this is not just a tempest in a teapot, an empty vehicle. Because, as Gonzaga says, the issue isn't just was there a violation of a statute, but was there a violation of a personal right? And it's the absence of the rights-creating language that's important. And I just wanted to point out that missing children and their families are not referred to in here. What the statute says is each agency shall report each case of a missing child. And I would submit that that language is pretty far removed. If a person has a child that turns up missing, does the family have the right to have the applicable agency file such a report? No, Your Honor. I don't see how. And it's not just the use of the impersonal language. But, again, the backdrop, as Castle Rock talks about, that this is a backdrop of public rights. We don't traditionally have a right to compel an agency to investigate or to prosecute. It's not an area in which there are traditionally private rights conferred. We're not being compelled to prosecute or investigate. Just put some information into the data bank so that an investigation becomes, across jurisdiction, becomes possible. Because all they have to do is almost require a ministerial act that will cost them almost nothing. Congress can clearly take that step. And I'm warning you now, if you're saying that Congress took that step and they foresaw a situation where what they're requiring cannot be compelled, and there's no right on the part of the parents whose kids are running away to have a report filed, that's what you're arguing. Yes, and more than that, Judge McHugh, it's just that there's a lack of rights-creating language suggestion in here. It doesn't say, like Savory says, families of missing children shall be eligible to have reports entered in a database. That's not the language that's used here. It's even stronger. So you will have the report filed. The report will be filed. But again, I think that Gonzaga and Savory point out that making things mandatory and making them binding and imposing an obligation is not the same thing as conferring a personal right upon an individual to enforce that obligation. And I just point out that Savory, when it got to the point of finding that there was a binding obligation in that case, stated at page 189 that, quote, the provision confers a binding obligation, but, quote, whether the same provision confers rights enforceable by individuals is another question, end quote. And I think that that's where the rights-creating language comes in that's not present in this statute. And I'd just like to go back just for a second on the issue that this is a backdrop statute with a backdrop of subject matter in which there's not traditionally private rights at issue. And I think that that's really important whenever the issue before you was whether you can find unambiguous congressional intent to confer a right. And Gonzaga makes kind of a similar point in footnote 6 of the case, which I hadn't pointed out in my brief, that I wanted to just draw attention to real quickly. And Gonzaga talks about the asserted right to withhold consent to the release of your records in school is, quote, a far cry from the sort of individualized concrete monetary entitlement found enforceable, end quote, in cases like Maine v. Thibodeau, which concerned welfare benefits, or the Wilder case, which concerned rent payments in public housing. We're not in an area in which there are traditionally rights and entitlements conferred, and I think that that's really important. And just one point. I did want to make on Borrella, and I'll touch on procedural due process if I have a chance to come back to it. But there was a reference to the Mr. Moran made a reference to the fact that the Castle Rock case uses the language every reasonable means to enforce, and perhaps that's a distinguishing factor on the issue of whether there's a mandatory obligation conferred. And I would just point out that in the Borrella case that this court recently decided, which is 2000 U.S. Appellate 21924, Borrella pointed out that that's kind of a false distinction because Castle Rock was addressing the language shall rest, and Borrella itself addresses the Pennsylvania Protection from Abuse Act, which also uses what seems to be mandatory language, shall rest. So if there are no further questions, I'll move on to the state punitive danger issue. What I hear Mr. Baird to be asserting, the main problem with his complaint, is that it sounds to me like it's an assertion that we prevented ourselves from rescuing Delamore by making this declaration of debt. That's kind of what he's arguing. And I would say at the end of the day, that's not actionable. Incompetent rescue services is not something that's actionable. Ms. Clavis, who didn't have a state creative danger claim, had sort of a different twist on it, which has problems for different reasons. She asserted that because the family would have trusted, or other potential rescuers would have trusted the determination we made that Delamore was dead, that they were thereby dissuaded from making a rescue attempt. And I think that there are several problems with that assertion. First of all, it's highly speculative, and speculation isn't a sufficient distinction from the DeShaney case. Well, it's speculative because it's a question of probability. It may not be 100% certain, but it's pretty close to it. If you have other people, why in the world would they investigate where you've got a police report, a fire report, I think both reports were filed, a medical examiner report was filed saying that, no, there wasn't any medical examiner, there wasn't anything to examine, saying that the infant died in a fire. Why would anybody, limited time, limited resources and everything else, why would they investigate the disappearance of someone who the city is telling them died in a fire? Because Ms. Clavis is contending that she knew all along that she didn't see the child in the bedroom. So if we're saying, well, she must have been consumed by the fire, she died, why would you rely upon that? But just going beyond that, I think that that theory has more fundamental serious problems, just taking it as an assumption that they would have investigated and rescued, but for our determination. And that is not an affirmative act under the Bright case. And the Yee case and the Bennett case have only served to strengthen and confirm that. And the Yee case is a situation that's incredibly analogous to this one where the patient trusted the doctor's diagnosis that he would be fine. That diagnosis turned out to be incredibly wrong, and he suffered a really severe heart attack that evening. And the contention was, well, you dissuaded me from going to an emergency room. And this court found that, well, under Bright and under DeShaney, what we're talking about in a substantive due process analysis is some kind of restraint on your freedom must be the affirmative act, some kind of restraint on your freedom to rescue yourself. And there was no assertion in that case that the Yee family had been prevented from taking Mr. Yee to an emergency room. And Judge Trump barely mentioned the Bennett case. The other finding in the Bennett case I would suggest is even more highly analogous. In the Bennett case, there was a theory that because Department of Human Services had closed a file on the children and said we can't find them when they went missing, that thereby prevented the child advocate from doing an independent search, and that was the independent source of rescue that we prevented. And Judge Slover said in that case no. And she rejected that theory because she said that the child advocate remained free to search for the children, and I would submit that that's the same thing here. Yeah, that's one of the things. The assertion is we've made an improper determination about what happened to the kids. You've relied upon that determination to your detriment, but we haven't done anything to prevent you from searching on your own. And I would submit that it's all the more clear here where the information was within Ms. Cuevas' possession that she hadn't seen the child. Yeah, but isn't this a little more final? It's clearly more final when they said the child's dead. And to me, at least as the affirmative act prong, that statement is different than Bennett, a little different than Bright, and perhaps different enough to equate to the affirmative act that at least deterred Ms. Cuevas, because that's not her claim, Mr. Vera, from going forward, expending any energy to try to find this 10-day-old child over the six-year period. And I think the longer you get away from the fire and that occurrence, the harder it is to revisit someone else's decision that your child is dead. Although the finality might make my job harder from a causation point, if we're in discovery, but I don't think it makes my job harder from the perspective of proving to you that it's not an affirmative act within the meaning of Dushane and Bright, that it's not a restraint of liberty upon their ability to rescue. It's the same contention. You made a terrible determination. It was so wrong, and I relied upon that determination, but you didn't impose upon my liberty to go and do what I wanted anyway. We didn't prevent Mr. Yee from going to the emergency room and distressing what we said. We didn't prevent Ms. Cuevas or Mr. Vera from going and searching on their own and saying, no, I don't accept your determination. I'm not going to debate that with you. I just also want to point out that on the state-created danger claim, I don't want to take up argument time with it, but that for quality and immunity purposes, there has to be an individualized assessment with respect to each individual, and I don't see the briefs on their side doing that, and each of my clients. Mr. Court didn't decide that. Never got to it. Didn't have to deal with that issue. Right. Okay. Thank you. Thank you very much. Shall I address state-created danger or the statutory first? I'm having problems with both, so you start wherever you want to start. Okay. Well, regarding the state-created danger, Judge Fischer hit the nail right on the head. It is final. When you say dead, dead means dead. That is different from, you know, we're closing our books. But, you know, Dickens, and I know we're limited as to what we really know here regarding the 12B6 posture, but this is not a situation where the nature of the state act really caused the harm or was the intervening object which set the ball rolling down the road. It's called babysitter. Let's pretend nothing happened. And, by the way, we did plead that the babysitter was in the house on the day, and that's who was the kidnapper. It's 69 of the appendix. You get this report, call the babysitter and say, wait a minute, where was my baby? The babysitter says, in the fire. The baby died in the fire. She said, no, I looked in the fire before the fireman got there. My baby was not in the room. And I'm assuming this is actually true. You were the last person to have seen my baby before the fire reported. What did you do with my baby? And unless that answer is incredibly good, they're going to go over to the house and look. They're going to do something. We would like to explore that causation issue. We would like to do that. We would like to take the depositions, get the experts, because let's take the city out of the equation. But you're actually saying that the 336 is a state-created danger issue. It's not enough to simply say that we want the opportunity to explore that. You've got to show the relationship here of the state authority causing the harm. Or they have to be in a foreseeable class of people. And in this case, the city took over the site, took over the house. Lines are up. We're the fire department. You can't conduct your own fire investigation. There's no such thing as a private fire investigation when there's a fire. They won't let you do it. They go in and do it themselves. The tape is up, the whole deal. And in this case, the city knew it didn't have a body, and it declared her dead anyway. And if you take the city out of the picture, what happens? You have a fire. You have a mother who believes that her child is missing. And the reason declaring Delamar dead is so profound is that it removed all hope. If the city says, we don't know, there's hope. Community groups get together. Maybe she gets money to go and conduct an investigation to find out where her baby is. But when someone, when an official government proclamation comes out that your child is dead, there are very few people who are going to say, well, I'm just going to go and search anyway. It doesn't recognize the reality of the situation. On the statutory construction, I don't know what language would satisfy the city of Philadelphia in a statute short of you have a right. We have an unenforceable statute here. It is a statute adrift according to the city. You've got an attorney general proclaiming and regulations, various things to no effect and for no purpose. And it's, as I suggested in the brief, a polite suggestion. That is not what federal legislation is about. It's about people. Thank you. Thank you. We'll take a brief break before the next case. We'll take this matter under advisement. Again, thank counsel for her helpful argument. Thank you. Thank you.